1  GARY L. TYSCH, ESQ. #128389
   E-mail: gltysch@pacbell.net
2  LAW OFFICES OF GARY L. TYSCH
   16133 Ventura Boulevard, Suite 580
3  Encino, California  91436-2411

4  (818) 995-9555 main
   (818) 995-9550 facsimile
5
   Attorneys for Plaintiffs IV SOLUTIONS, INC. as an Assignee
6  and IV SOLUTIONS, INC. in its Own Individual Right

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  IV SOLUTIONS, INC., a              )  CASE NO.: EDCV 07-1603 VAP (JWJx)
    California Corporation, in its     )
12  capacity as Assignee under an      )  **PLAINTIFFS' MEMORANDUM OF**
    Assignment of Benefits and IV      )  **POINTS AND AUTHORITIES IN**
13  SOLUTIONS, INC., a California       )  **OPPOSITION TO DEFENDANT'S**
    corporation, in its own separate and )  **MOTION FOR TERMINATING**
14  individual right and capacity,     )  **SANCTIONS**
                                       )
15          Plaintiffs,                )  **DATE:      April 27, 2009**
                                       )  **TIME:      10:00 a.m.**
16     vs.                             )  **PLACE:     Courtroom 2**
                                       )  **JUDGE:     Hon. Virginia A. Phillips**
17  THE OFFICE DEPOT                   )
    EMPLOYEE WELFARE                   )  [Served concurrently with Notice of
18  BENEFIT PLAN and DOES 1            )  Opposition to Motion for Terminating
    through 50, inclusive,             )  Sanctions; Declaration of Alex Vara in
19                                     )  Support of Plaintiffs' Opposition to
                                       )  Defendant's Motion for Terminating
20          Defendants.                )  Sanctions; Plaintiffs' Objections to
                                       )  Evidence Proffered by Defendant the
21  ———————————————————————            )  Office Depot Employee Welfare Benefit
                                          Plan in Support of its Motion for
22                                        Terminating Sanctions]

23                              **1.**

24                       **INTRODUCTION**

25       Plaintiff IV SOLUTIONS, INC. ("IV SOLUTIONS"), provides pharmaceuticals,

26  supplies, and home fusion services in California.  In the same way that many medical

27  providers and physicians are now choosing not to accept health insurance coverage or

28  to contract with health insurance carriers, IV SOLUTIONS too maintains no preferred

                                    1
       ——————————————————————————————————————————
       **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**
       **OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS**

provider arrangements or contractual relationships with third party payers such as
Medicare, Medi-Cal or insurance companies.  In this way, IV SOLUTIONS sets its own
prices for its products and services and its prices are not fettered by any prescribed or
contractual discount rates that would be applied by Medicare, Medi-Cal or by other third
party payers were IV SOLUTIONS to have pre-payment arrangements with such entities.

In the case at bar, IV SOLUTIONS was contacted by UCLA Medical Center's
transplant coordinator and was requested to provide services to UCLA's newly
discharged patient, Glorianne P, consisting of the home administration of IVIG.  UCLA
had a contractual relationship with CIGNA to provide transplant services for a flat rate.
CIGNA, in turn, had a contract with THE OFFICE DEPOT EMPLOYEE BENEFIT
WELFARE PLAN ("OFFICE DEPOT") to provide third party administrative services
to the Plan.   When CIGNA was contacted by IV SOLUTIONS before any IV
SOLUTIONS' services had been rendered to the patient, CIGNA assumed that its case
rate for transplant services with UCLA would include coverage for the home infusion
services to administer IVIG to Glorianne P. by IV SOLUTIONS.  However, the UCLA
contract provided that such services (those services rendered by IV SOLUTIONS) would
be covered under the case rate with CIGNA only if those services were provided within
the geographical area surrounding UCLA or if those home infusion services would be
rendered by UCLA itself.

Instead, because Glorianne P. resided in Yucaipa, at a great distance from UCLA,
UCLA was not able to service the patient or provide home healthcare and infusion
services, did not consider Glorianne P.'s home infusion services to be within its contract
with CIGNA and referred the case to IV SOLUTIONS.  UCLA apparently assumed that
IV SOLUTIONS would be paid by CIGNA, while CIGNA apparently believed that the
UCLA case rate for transplant services would apply to provide payment to IV
SOLUTIONS.  Despite the assignment of a transplant case manager or utilization review
monitor by CIGNA to Glorianne P.'s case, CIGNA never discovered its error, namely
that the CIGNA contract with UCLA did not cover the services provided by IV

1  SOLUTIONS, until more than six months of treatment by IV SOLUTIONS had been
2  rendered to Glorianne P.

3      All along, CIGNA was completely aware of the fact that IV SOLUTIONS was
4  rendering the treatment, had authorized and assented to the provision of IVIG by IV
5  SOLUTIONS and was receiving claims from IV SOLUTIONS for the same treatment.
6  When, CIGNA finally realized its error and recognized that UCLA had no obligation to
7  pay for the home infusion services and products rendered to Glorianne P. by IV
8  SOLUTIONS, it nevertheless insisted that UCLA should pay for those services and
9  denied coverage under the OFFICE DEPOT Plan.

10     For its part, IV SOLUTIONS contended that initially, when communication
11  between IV SOLUTIONS and CIGNA was initiated before services had begun, CIGNA
12  had not only assented to the rendition of home infusion services and provision of
13  pharmaceuticals and supplies to Glorianne P. by IV SOLUTIONS, but had agreed to pay
14  IV SOLUTIONS at IV SOLUTIONS' billed rates.  Based upon this oral representation,
15  Plaintiff maintained in its Complaint that OFFICE DEPOT was obligated to pay its billed
16  charges for the services, supplies, and pharmaceuticals rendered by IV SOLUTIONS to
17  Glorianne P.  Various other counts were also maintained at the same time, involving the
18  alleged oral representation of CIGNA to pay IV SOLUTIONS' billed rates.  In addition,
19  IV SOLUTIONS asserted a claim on behalf of Glorianne P., sounding in a claim for
20  benefits under the Plan under ERISA.

21     As early as the Administrative Appeal Process in this case, OFFICE DEPOT and
22  its agent, CIGNA, have taken the position that no benefits were owed to IV
23  SOLUTIONS, since IV SOLUTIONS' charges were allegedly excessive, above what
24  would be considered reasonable and customary, and since IV SOLUTIONS was a non-
25  contracted, out-of-Plan provider, who had allegedly not received authorization to render
26  services.  OFFICE DEPOT has asserted that its EPO contract, the Plan, prohibits
27  payments to out-of-network providers. However, during the course of the administrative
28  review of this case, CIGNA offered to waive these defenses and to pay IV SOLUTIONS

1  at a rate of wholesale prices plus 20%.  When this offer was not accepted by Plaintiff,
2  this action ensued.

3      During the deposition of IV SOLUTIONS' principal, Alex Vara, an alleged
4  invoice supporting the cost of the IVIG to IV SOLUTIONS was produced.  Defendant
5  now moves to dismiss the action in its entirety as a terminating sanction, alleging that the
6  production of the purported invoice and the authentication of that document constituted
7  a discovery abuse and an abuse of the judicial process.

8      At the same time as this Motion was filed, Defendant also filed a Motion for
9  Summary Judgment/Adjudication, challenging all of the counts asserted in Plaintiffs'
10  Second Amended Complaint and seeking a dismissal of the entire action.  Plaintiffs have
11  opposed only the Defendant's Motion for Summary Judgment/Adjudication as to  the
12  first count, for recovery of ERISA benefits, and have allowed the other counts involving
13  state law claims to be dismissed.  Plaintiffs have chosen not to oppose the Motion for
14  Summary Judgment/Adjudication brought by Defendant as to the state law counts.  Thus,
15  the only count that remains viable is Plaintiffs' first count for ERISA benefits based upon
16  its assignment from Glorianne P.   The instant case now is premised solely upon ERISA
17  jurisdiction, and does not include any state law rights.

18      In essence, Plaintiffs have, by their non-opposition to Defendant's Motion for
19  Summary Adjudication of the state law counts, allowed those counts to be terminated and
20  have severed their ERISA case from the state law claims.   The result of this non-
21  opposition is that the Motion for Terminating Sanctions has been partially mooted.  In
22  other words, by not opposing the Motion for Summary Judgment on all counts, and by
23  allowing the state law counts to be dismissed, Plaintiffs have given Defendant what it
24  seeks in its Motion for Terminating Sanctions, at least in part.   Allowance of the
25  dismissal of the state counts amounts to a self-imposed sanction, effectively terminating
26  all counts against the Defendant except for the ERISA count.

27      Since the ERISA count would not involve the need for discovery, testimony, or
28  the introduction of evidence beyond or outside the administrative record, no prejudice

4

to the Defendant can be said to have occurred in the ERISA case by the prior discovery abuse (which pertained only to the state law counts).  Moreover, there is no threat that the prior discovery abuse could taint, affect or otherwise impede the orderly administration of justice in the ERISA action or threaten to interfere with the ability of the court to mete out justice in the surviving case.

IV SOLUTIONS, INC. asserts in this Opposition that Defendant's Motion for Terminating Sanctions must be denied.  Not only was the "false testimony" in this case was not related to and did not involve any critical issues of this case, was irrelevant or not material to the state law claims, but it also has absolutely no bearing relationship or import for any of the ERISA claims that will now completely comprise the case.  Defendant assumes that the ActSys invoice was a "critical document in this case."  In essence, Defendant has likened that invoice to a smoking gun or to evidence upon which the case is made or lost.  As demonstrated by this Opposition, however, the subject document was never critical to the presentation of Plaintiffs' state law claims for misrepresentation and breach of oral contract, involving only potential issues of damages.  Liability could not and would not have been established through the subject document for any of the counts.  At best, the document merely showed part of the basis upon which IV SOLUTIONS calculated its prices and may have indirectly supported its claim for damages under the state law claims asserted against OFFICE DEPOT.

**2.**

## IN ORDER FOR TERMINATING SANCTIONS TO ISSUE, THE DECEPTIVE DOCUMENT MUST BE SEMINAL, RELEVANT AND MATERIAL TO THE DISPOSITION OF THE CASE.

The actual charges of IV SOLUTIONS comprised the damages alleged by IV SOLUTIONS under the state law claims.  Therefore, the subject document, which purportedly demonstrated the amount that IV SOLUTIONS had paid for IVIG administered to Glorianne P., at best is circumstantial evidence supporting the damages.  / / /

1    It certainly was not a smoking gun and it certainly was not critical to the disposition of

2    the state law claims previously asserted by Plaintiff.

3         Moreover, the document had no bearing on the ERISA claim since the document

4    was inadmissible under ERISA.  The subject document did not comprise a part of the

5    administrative record, was not included in the administrative record, and was not

6    produced until well into the litigation of this case.  Since the state law claims are now

7    mooted by the non-opposition to the Motion for Summary Judgment/Adjudication

8    brought by Defendant, the subject document has absolutely no relevance in the case

9    going forward, such that there is no possibility that the subject document will threaten

10   the integrity of the court's determination or adjudication of the substantive issues of this

11   case.

12        Although terminating sanctions may be appropriate where the discovery process

13   has been abused or where a party has sought to deceive the court, there are limitations

14   on the imposition of such sanctions.  As stated in *Fjelstad v. American Honda Motor*

15   *Co., Inc.*, 762 F.2d 1334 (9th Cir. 1985):

16        Due process limits the imposition of the severe sanctions of dismissal or

17        default to 'extreme circumstances' in which 'the deception relates to the

18        matters in controversy' and prevents their imposition 'merely for

19        punishment of an infraction that did not threaten to interfere with the

20        rightful decision of the case.'  *Wyle*, 709 F.2d [585] at 585, 591.

21   *Fjelstad* at 1338.  In the instant case, it clear that the subject document neither related to

22   nor now relates to matters in controversy or that the ability of the court to determine the

23   substantive issues of the case is negatively affected in any meaningful way.

24        Thus, this case is distinguished from *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486

25   (9th Cir. 1981).  In *Combs*, Combs allowed his deposition transcript to be altered by his

26   attorneys and knowingly permitted the alterations.  The court found that the changes in

27   the deposition transcript "dealt with issues of central importance in the upcoming

28   summary judgment hearing."  *Id.*, at 488.  More analogous is the case of *Phoceene Sous-*

1    *Marine, S.A. v. U. S. Phosmarine, Inc.*, 682 F.2d 802 (9th Cir. 1982).  In that case, a trial

2    continuance was obtained based upon a falsified doctor's report which was submitted to

3    the court to justify the trial continuance.  After dismissal of the action based upon the

4    counterfeited medical report, the Ninth Circuit Court of Appeals reversed the dismissal

5    finding that the conduct was not technically a "fraud on the court" as that term is defined

6    since it did not influence the court in its decision on substantive matters and did not

7    involve conduct which was "utterly inconsistent with the orderly administration of

8    justice."  *Phoceene* at 805.  The *Phoceene* court ruled that:

9         [E]ntry of default as a sanction for a deception of the court on a matter

10        wholly unrelated to the merits of the controversy is inconsistent with the

11        requirements of due process.  Accordingly, we reverse the judgment of

12        default and remand the cause for further proceedings.

13   *Id.,* at 806.

14        Similarly, in *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989), the plaintiff

15   produced a counterfeit purchase agreement which was attached to his complaint.  He

16   then, through various forms of discovery, corroborated the falsified agreement until the

17   falsity of the agreement was discovered.  The trial court observed that the plaintiff's

18   entire case was dependent upon the falsified agreement and dismissed the case based

19   upon the abusive practice of the plaintiff.  In essence, the court found that since the

20   falsified document was so crucial to the maintenance and prosecution of the plaintiff's

21   case, once that document had been shown to be falsified, there was little ability for the

22   court to continue to entertain the case since the court would be skeptical of any other

23   evidence introduced by the plaintiff and there was little likelihood that plaintiff could

24   prevail in any event.  In order words, the court drew a legitimate inference regarding the

25   merits of the plaintiff's case from the attempted introduction of a falsified document that

26   because plaintiff had introduced a falsified document he had no other documents to

27   produce to support his case and that dismissal was therefore appropriate.  Since, in the

28   case at bar, the subject document is not crucial to the case, but is rather peripheral,

7

potentially irrelevant and certainly not cogent or material to the case, there is no basis for imposing a terminating sanction here.

In *Wanderer v. Johnson*, 910 F.2d 652 (9th Cir. 1990), the defendants engaged in a systematic pattern of consistent refusals to comply with discovery and various court orders.  There, the court found that the default judgment entered against the defendants was appropriate given the defendants' flagrant disregard of orders regarding discovery, and the "inexcusable obstructions of every type of discovery attempted by the plaintiffs." *Id*., at 653.  The court found that these discovery abuses were prejudicial to the plaintiffs' ability to prosecute their case.  Given the fact that the *Wanderer* court had considered and imposed less severe sanctions and alternatives prior to the imposition of the default, the terminating sanction was justified in that case.  In the instant case, however, there has been no pattern of systematic abuse of the discovery process.  There has been one, isolated instance of alleged abuse, but no sanctions have ever been imposed against Plaintiffs in this case for any form of discovery abuse or for any reason at all.  Thus, terminating sanctions in this case are not justified.  The imposition of lesser sanctions are more appropriate under the circumstances of this case.  Further, as demonstrated above, the Plaintiff has self-imposed a form of terminating sanctions by not opposing the Defendant's Motion for Summary Judgment/Adjudication on the state law counts.

Similarly, in *Halaco Eng'g Co. v. Costle*, 843 F.2d 376 (9th Cir.1988), the court held that the willful discovery abuses transacted by the EPA and its attorneys could not justify a terminating sanction.  There, the court held:

> The measure of EPA's fault is, however, minimal.  *See Fjelstad*, 762 F.2d at 1343 (single willful violation imposition for dismissal sanction).  The contents of the EMSL report were presumably intended for, at most, introduction at trial as evidence.  Halaco objected to the method of preparing the report even before it had any use in the litigation.  If EPA had sought to introduce the report at trial, Halaco might have had a colorable claim that the method of preparation constituted an abuse of litigation

8

1    tactic.  At least, Halaco would have had ample grounds to discredit the

2    report.  We hold that it was error for the district court to dismiss EPA's

3    counterclaim because it found EPA to be at fault in the preparation of the

4    misleading contents of the EMSL report.  The fault at issue was insufficient

5    to support a dismissal.

6 *Halaco* at 381.   The court then directed that less drastic sanctions needed to be

7 considered by the trial court before dismissal was warranted.

8 3.

9 **TERMINATING SANCTIONS ARE INAPPROPRIATE HERE**

10 **GIVEN THE STRONG PUBLIC POLICY FAVORING**

11 **DISPOSITION OF CASES ON THEIR MERITS AND THE**

12 **AVAILABILITY OF LESS DRASTIC SANCTIONS.**

13 In the Ninth Circuit, the court has enunciated a five-pronged test for determining

14 whether a terminating sanction such as dismissal or the entry of default is appropriate for

15 discovery abuses or other attempted deceptions of the court.  Thus, it was stated in

16 *Anheuser Busch, Inc. v. Natural Beverage Distrib.*, 69 F.3d 337 (9th Cir. 1995) that:

17    Before imposing the harsh sanction of dismissal, the district court must

18    weigh several factors:

19        (1)  The public's interest in expeditious resolution of litigation; (2)

20    The court's need to manage its dockets; (3) The risk of prejudice to the

21    party seeking sanctions; (4) The public policy favoring disposition of cases

22    on their merits; and (5) The availability of less drastic sanctions.

23 *Id*. at 348.  Thus, the public policy interest in disposing of cases on their substantive

24 merits must be weighed in considering a motion for terminating sanctions.  Further, the

25 availability of less drastic sanctions must also be considered.  Here, no previous

26 warnings, orders, or sanctions have been issued by this court against Plaintiffs and there

27 has been but one alleged abuse of the discovery process.  Since the court can fashion an

28 order which appropriately sanctions the Plaintiffs for the discovery abuse without

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**
**OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS**

1    imposing a terminating sanction, a terminating sanction is inappropriate and inapplicable

2    in this case.  Moreover, the ability to fashion an order short of terminating sanctions has

3    been demonstrated by the Plaintiffs themselves, since they have self-imposed a form of

4    terminating sanctions upon themselves by consciously not opposing the Motion for

5    Summary Judgment/ Adjudication of the state law counts.  All of the state law counts

6    will be removed from this case, and Plaintiffs can proceed solely on their ERISA based

7    claims without the need to introduce any evidence other than the evidence contained

8    within the administrative claim file or the Administrative Record.  That record would be

9    free from any taint of perjury and would not require the court to weigh evidence since

10   the Administrative Record is comprised of the claim file which was maintained by

11   CIGNA in this case.  Further, any prejudice that may have occurred from the introduction

12   of the subject document is also mitigated and obviated by the dismissal of the state law

13   claims since the subject document is irrelevant to a disposition of the ERISA claims

14   entirely.

15              As enunciated in *Wyle v. R. J. Reynolds Indus., Inc.*, 709 F.2d 585 (9th Cir. 1983):

16              Dismissal is a permissible sanction only when the deception relates to the

17              matters in controversy, and because dismissal is so harsh a penalty, it

18              should be imposed only in extreme circumstances. [Footnote omitted.]

19              *Raiford v. Pounds*, 640 F.2d 944, 945  (9th Cir. 1981).

20   *Wyle* at 589.  In *Wyle*, the court found that the discovery abuses had resulted in

21   irreparable loss of material evidence which justified the imposition of terminating

22   sanctions.  As demonstrated herein, the subject document is not a crucial document and

23   is not material evidence which would justify the imposition of a terminating sanction.

24              In *Adriana Int'l Corp. v. Kunz*, 915 F.2d 1406 (9th Cir. 1990), terminating

25   sanctions were imposed for discovery failures and abuses only after lesser sanctions had

26   previously been imposed and the parties had been forewarned of the possibility of

27   dismissal by the court.  In the case at bar, there have been no previous sanctions against

28   Plaintiffs and Plaintiffs have never been forewarned of the possibility of dismissal

_____

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS**

because there have been no previous alleged discovery abuses.  A dismissal with prejudice was reversed by the Ninth Circuit Court of Appeals in *United States of America v. Nat'l Medical Enterprises, Inc.*, 792 F.2d 906 (9th Cir. 1986) when the court found that the trial court had failed to consider the impact of imposing less drastic sanctions then the terminating sanction.  There, the court found that other less drastic sanctions must be considered by the trial court prior to ordering a dismissal.  *See also*, *North American Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451.

**4.**

**THERE IS NO ADMISSIBLE EVIDENCE DEMONSTRATING THAT ALEX VARA INTERFERED WITH THE DEPOSITIONS OF JUNE BEDFORD OR KRYSTAL PINKNEY.**

Based upon pure speculation and conjecture, Defendant has asserted that Krystal Pinkney did not appear for her deposition because of an improper act on the part of Alex Vara.  Yet, there is no evidence to show that Mr. Vara had anything to do with Pinkney's non-appearance.  In fact, the Declaration of Alex Vara attests to the fact that he had no conversations with Pinkney since the initiation of this action and so could not have instructed her to not appear at her deposition.

Likewise, the evidence pertaining to June Bedford's failure to appear at the first session of her deposition does not implicate Alex Vara in any way in preventing her or in instructing her not to appear at her deposition.  In fact, Bedford testified in her deposition that she had not been instructed by Alex Vara to refuse to attend the deposition, but had chosen on her own not to appear because she could not remember the case and did not believe that she had anything that she could offer through her deposition.

Therefore, there is no evidence that Plaintiffs or Alex Vara have engaged in any type of discovery abuse or obstructive behavior other than the production of the subject document.

/ / /

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS**

# 5.

## CONCLUSION.

For all of the foregoing reasons, it is respectfully requested that the Motion for Terminating Sanctions filed by Defendant be denied.

Respectfully submitted,

DATED: April 14, 2009          LAW OFFICES OF GARY L. TYSCH

By:_____/s/ Gary L. Tysch_____
          GARY L. TYSCH
          Attorneys for Plaintiffs IV SOLUTIONS,
          INC. as an Assignee and IV
          SOLUTIONS, INC. in its Own
          Individual Right

MemoPsAs-OppMTermSanc1.wpd

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS