O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IV SOLUTIONS, INC., a California Corporation, in its capacity as Assignee under an Assignment of Benefits and IV SOLUTIONS, INC., a California Corporation, in its own separate and individual right and capacity, | Case No. EDCV 07-1603-VAP (JWJx) |
| | **[Motions filed on March 24, 2009]** |
| | **ORDER GRANTING TERMINATING SANCTIONS, GRANTING SUMMARY JUDGMENT** |
| Plaintiff, | |
| v. | |
| THE OFFICE DEPOT EMPLOYEE WELFARE BENEFIT PLAN and DOES 1 through 50, inclusive, | |
| Defendants. | |

Defendant's Motions for Terminating Sanctions and for Summary Judgment came before the Court for hearing on April 27, 2009. After reviewing and considering all papers filed in support of, and in opposition to, the motions, as well as the arguments advanced by counsel at the hearing, the Court GRANTS both motions.

"There is no point to a lawsuit, if it merely applies law to lies.  True facts must be the foundation for any just result." Valley Engineers, Inc. v. Electrical Engineering Co., 158 F.3d 1051, 1058. (9th Cir. 1998) (upholding dismissal for wrongful concealment of authentic document).

Defendant The Office Depot Employee Welfare Benefit Plan ("Defendant") moves the Court to dismiss Plaintiffs' entire case because Alex Vara (or Alex Vera or Alex Varastphpour, as he is called in his deposition transcripts) ("Vara")), the sole principal and owner of Plaintiffs IV Solutions ("Plaintiffs"),[1] allegedly fabricated an invoice from ActSys Medical, Inc. ("purported ActSys invoice") and represented it as authentic at the second session of his deposition.

Plaintiffs state they do not oppose summary judgment on their state law claims as a self-imposed sanction; they intend to prosecute only their Employee Retirement Income Security Act of 1974 ("ERISA") claim.  Plaintiffs assert the ERISA claim is not contaminated by Vara's misconduct.  The administrative record would contain claim forms submitted by Plaintiffs to Defendant, however, and the ERISA claim would turn in part on these

_____

[1] IV Solutions is referred to as "Plaintiffs" because it brings suit both in its capacity as assignee and in its individual capacity.

2

documents.  Therefore, Vara's misconduct infects the
entire lawsuit.  The Court GRANTS the Motion for
Terminating Sanctions and GRANTS the Motion for Summary
Judgment on the merits and, in the alternative, GRANTS
the Motion for Summary Judgment as a sanction.

**I.  BACKGROUND**

**A.   Procedural History**

Plaintiffs filed their Complaint on December 5, 2007.
On April 8, 2008, Plaintiffs filed a First Amended
Complaint ("FAC").  On May 23, 2008, the Court granted in
part and denied in part Defendant's Motion to Dismiss the
FAC.  Plaintiffs improperly attempted to file the Second
Amended Complaint ("SAC") on June 11, 2008
electronically, rather than through paper documents, as
the Local Rules require.  Plaintiffs received a Notice to
Filer of Deficiencies in Electronically Filed Documents
notice.  The Court did not order an amended document be
filed or strike the document.  The Court hereby deems the
SAC filed as of June 11, 2008.

On March 24, 2009 Defendant filed a Motion for
Terminating Sanctions ("Sanctions Mot.") seeking
sanctions pursuant to the Court's inherent powers, as
well as a Motion for Summary Judgment ("Mot. Summ. J.")
as to all of Plaintiffs' claims.

On April 13, 2009, Plaintiffs filed Opposition to the
Motion for Summary Judgment, stating they would not
oppose summary judgment as to any claim but their first,
for violations of ERISA.  (Summ. J. Notice of Opp'n 1-2.)
Plaintiffs since have described their failure to oppose
summary judgment on certain claims as a self-imposed
sanction for fabrication of the purported ActSys invoice.
(Sanctions Opp'n 4.)  The Court construes Plaintiffs'
decision not to oppose all but the ERISA claim as
voluntary dismissal of the unopposed claims with
prejudice pursuant to Rule 41(a)(1) of the Federal Rules
of Civil Procedure.

On April 14, 2009, Plaintiffs untimely filed
Opposition regarding the Sanctions Motion.  Although
pursuant to Local Rule 7-12 the Court need not consider
Plaintiffs' untimely opposition to sanctions, in the
interests of justice, the Court considers it.

Counsel met and conferred in compliance with Local
Rule 7-3 before filing both of the motions now before the
Court.  There has been no allegation Defendant ambushed
Plaintiffs with allegations of misconduct.

**B.   Evidentiary Objections**

Both parties filed evidentiary objections.
Plaintiffs object to evidence supporting Defendant's

1   Sanctions Motion and Defendant filed a Response to those

2   objections.  Defendant objects to Plaintiffs' evidence

3   proffered in opposition to the Motion for Summary

4   Judgment.

5

6   **1.   Evidence offered in support of Sanctions Motion**

7   **a.   Corrected[2] Declaration of Diana E. Shaffer**

8   The Court OVERRULES Plaintiffs' relevancy objection

9   to paragraphs 4 and 5, and accompanying exhibits of the

10  Corrected Declaration of Diana E. Shaffer ("Shaffer

11  Decl."), except the text in paragraph 4 which begins

12  "[b]ased on the price. . ." and concludes ".. would have

13  cost $5005.00."  These paragraphs and exhibits show that

14  two other medical providers, UCLA and Coram Specialty

15  Infusion Services ("Coram"), provided intravenous

16  treatment to Glorianne Persinger ("Persinger") in similar

17  doses to those for which Plaintiffs demand payment.  This

18  evidence tends to show Plaintiffs charged more for

19  intravenous treatment than did other providers and

20  provides a motive for fabricating the purported ActSys

21  invoice.  Defendant explains the relevance of this

22  evidence in its moving papers.  (See Def.'s Response to

23  Pl.'s Objections 2.)

24

25  _____

26  [2]Shaffer's declaration, like several others, is
    "corrected" because it was resubmitted to comply with

27  Local Rules relevant to formatting and presentation of
    evidence.  The correction does not refer to the substance

28  of the declaration.

**b.   Declaration of Jim Packlaian**

The Court OVERRULES Plaintiffs' relevancy objection to paragraph 7 of the Declaration of Jim Packlaian ("Packlaian Decl.") and the accompanying exhibit.  This evidence, a list of invoices reflecting ActSys sales, tends to show ActSys issued no invoice corresponding to the purported ActSys invoice.  (See Def.'s Response to Pl.'s Objections 2-3.)

**c.   Corrected Declaration of Robin J. Samuel in Support of Motion for Terminating Sanctions**

The Court SUSTAINS Plaintiffs' relevancy objections to paragraphs 4, 5, 6, 7, 8, 9, 10, and 11 and corresponding exhibits to the Corrected Declaration of Robin J. Samuel in Support of Motion for Terminating Sanctions ("Corr. Samuel Sanctions Decl."), which relate to the Complaints Plaintiffs filed in other cases.

The Court OVERRULES Plaintiffs' relevancy objection to paragraphs 19 and 20 of the same, documents from the deposition of June Bedford ("Bedford"), a former employee of Plaintiffs, which document her failure to appear at her deposition.  This information is relevant because Defendant claims Vara caused Bedford to fail to appear for her deposition.

1    The Court OVERRULES Plaintiffs' hearsay objections to
2    paragraphs 21 and 25, which describe Bedford's statement
3    to defense attorney Robin Samuel ("Samuel") that Bedford
4    received the subpoena but chose not to appear after
5    speaking with Vara.  These fall into a hearsay exception
6    as statements against interest.  (<u>See</u> Def.'s Response to
7    Pl.'s Objections 5.)

8

9    The Court OVERRULES Plaintiffs' relevancy objection
10   to paragraphs 24 and 25, and the corresponding exhibits.
11   These are documents from the deposition of Krystal
12   Pinkney ("Pinkney"), a former employee of Plaintiffs, and
13   they show she did not appear.  Her failure to appear is
14   relevant to the imposition of sanctions as Defendant
15   asserts Vara caused her absence.

16

17   The Court OVERRULES Plaintiffs' hearsay objection to
18   paragraph 22, in which Samuel states Pinkney agreed to
19   appear for her deposition.  (<u>See</u> Def.'s Response to Pl.'s
20   Objections 5, Fed. R. Evid. 803(3).)

21

22          **d.   Declaration of Laura M. Ahart**
23   The Court OVERRULES Plaintiffs' objection to
24   paragraphs 3 and 4 of the Declaration of Laura M. Ahart
25   ("Ahart Decl.") in which defense attorney Ahart states

26

27

28

Pinkney told her she planned to appear for her deposition.  It falls within the state of mind exception.

The Court OVERRULES the hearsay objection to paragraph 2 of Ahart's declaration as this recounts Bedford's statement she would not appear, which is a statement against interest, a hearsay exception.

### 2.    Evidence offered in opposition to Motion for Summary Judgment

The Court SUSTAINS all objections to the Declaration of Gary L. Tysch ("Tysch Decl."), Plaintiffs' counsel. The Court SUSTAINS the objections to paragraphs 3, 4 and 5 as well as Exhibits 1 and 2 as they violate Rule 408 of the Federal Rules of Evidence, which proscribes the use of offers of compromise to demonstrate prior inconsistent statements.[3]  Moreover, the objections to paragraphs 6 and 7 are SUSTAINED as this text violates Rule 801's prohibition on the offer of attorney testimony regarding the contents of records, and it runs afoul of Local Rule 7-7 by offering argument in a declaration.

Accordingly, the only admissible evidence Plaintiffs offer in opposition to the Motion for Summary Judgment is

---

[3] Plaintiffs' counsel properly authenticated these documents.  Nevertheless, they remain inadmissible.

Tysch's statement he represents Plaintiffs and that he reviewed documents in this case.

**D.  Facts**

  **1.  Parties**

  Vara is the sole principal and owner of Plaintiffs. (Declaration of Alex Vara in Support of Plaintiffs' Opposition to Defendant's Motion for Terminating Sanctions ("Vara Decl.") ¶ 1; Vara Dep. 24-25 attached as Ex. 1 to Corrected Declaration of Robin J. Samuel in Support of Motion for Summary Judgment ("Corr. Samuel Summ. J. Decl.") Ex. 1.)  Plaintiffs provide in-home intravenous medical services.  (Vara Dep. 38, at to Corrected Samuel Sanctions Decl.)

  Plaintiffs assert they provided over 3 million dollars' worth of medical services between November 2004 and April 2005 to Persinger, a beneficiary Defendant's Welfare Benefits Program ("Plan").  (Sanctions Opp'n 2; LaPlaca Decl. ¶ 6; LaPlaca Decl. Ex. A; Vara Dep. 64, 277, Ex. 30 at Samuel Corrected Summ. J. Decl. Exs. 1, 8.)

  According to the terms of the Plan, Defendant will not pay for out-of-network treatment without proper authorization; beneficiaries cannot assign benefits "[e]xcept as otherwise permitted (a) by the Committee as

Program Administrator or the Claims Administrator. . .".
(Defendant's Statement of Undisputed Facts ("DSUF") ¶ 1;
LaPlaca Decl. Ex. A at 28.)

Defendant contracted with CIGNA to administer Plan
benefits.  (LaPlaca Decl. ¶ 5.)  CIGNA is not a party to
this litigation.

Plaintiffs were not in-network providers for
Defendant and have no contract with Defendant or CIGNA or
any party to this litigation.  Vara testified insurers or
other third-party payers will not sign contracts to pay
Plaintiffs the rates they request.  (Vara Dep. 54, 104 at
Corr. Samuel Summ. J. Decl.)

## 2. Persinger's treatment

Persinger received a transplant and required follow-
up intravenous treatment.  (See Vara Dep. 64 at Corr.
Samuel Summ J. Decl.)  Persinger lived in Yucaipa and
thus was beyond the range of the providers usually used
by the facility where she received the transplant.
Accordingly, sometime in November 2004, either the
medical facility or CIGNA contacted Plaintiffs because
they could treat Persinger in Yucaipa.  (See Vara Dep. 60
at Corr. Samuel Summ. J. Decl.)

1   Plaintiffs claim a CIGNA case manager representative
2   agreed to pay their fees for Persinger's treatment, no
3   matter how high they were, without reduction, for as long
4   as treatment was necessary, which was likely to be
5   approximately one year; these unusual terms were
6   warranted by Persinger's need for immediate treatment.
7   (Vara Dep. 107, 62, 70-72 (testimony Plaintiffs would be
8   paid "[w]hatever we billed" rather than reduced fees) at
9   Corr. Samuel Summ. J. Decl.)  Vara also testified, in a
10  contradictory manner, that the CIGNA representative
11  promised to pay Plaintiffs as in-network providers, which
12  would usually involve reduced fees.  (Vara Dep. 63 at
13  Corr. Samuel Summ. J. Decl.)

14

15  Vara testified he made no record of this conversation
16  with the CIGNA representative.  (Vara Dep. 64-65 at Corr.
17  Samuel Summ. J. Decl.)  At his deposition, Vara agreed
18  with the statement that "[o]ther than the letters [he]
19  wrote after the fact to tell people about these
20  conversations" with CIGNA that it promised to pay
21  Plaintiffs all of the billed charges he is "not aware of
22  any documents which evidenced that the conversation took
23  place."  (Vara Dep. 89 at Corr. Samuel Summ. J. Decl.)

24

25  Plaintiffs provided services to Persinger for about
26  six months.  They bought enough Carimune, the necessary
27  medicine, for a full year of services.  (Vara Dep. 77 at
28

1  Corr. Samuel Summ. J. Decl.; Vara Dep. 47 at Corr. Samuel
2  Sanctions Decl.)

3

4      In approximately April, 2005, CIGNA arranged for a
5  different service provider for Persinger and denied
6  Plaintiffs' claims submitted on her behalf.  (See Vara
7  Dep. 77-78, 265 at Corr. Samuel Summ. J. Decl.)  Only
8  then did Vara learn CIGNA was a third-party
9  administrator.  (Vara Dep. 76-78 at Corr. Samuel Summ. J.
10  Decl.)

11

12      **3.   Plaintiffs' collection efforts**
13      Plaintiffs made attempts to collect from Defendant,
14  on behalf of Persinger, for services Plaintiffs rendered
15  to her as a Plan beneficiary.  (Vara Dep. 112, 137 at
16  Corr. Samuel Summ. J. Decl.)  Defendant did not promptly
17  pay.  (Vara Dep. 111 at Corr. Samuel Summ. J. Decl.)

18

19      Many of the documents relevant to monies owed to
20  Plaintiffs came from Plaintiffs themselves.  Vara
21  testified Plaintiffs sent CIGNA claim forms via
22  facsimile.  These forms were completed by his billing
23  staff, the full names of whom he testified he did not
24  recall, and attached documents which could include a
25  doctor's orders, a shipping list, or an invoice like the
26  one he allegedly fabricated.  (Vara Dep. 78-79, 137-40 at
27  Corr. Samuel Summ. J. Decl.)

28

**4.   Alleged falsification of evidence**

Vara's deposition took place in two sessions that occurred ten days apart in February 2009.  At the first session, Vara claimed he did not recall from whom he had bought Carimune, the medicine Plaintiffs supplied to Persinger.  (Vara Dep. 43-44. at Corr. Samuel Sanctions Decl.)  At the second, Vara produced a purported ActSys Medical, Inc. invoice for a sale of Carimune to Plaintiffs for over $800,000 and testified he had found it Plaintiffs' storage area.  Vara testified he himself placed the order reflected on the purported ActSys invoice.  (Vara Dep. 232-233, 250-51 at Corr. Samuel Sanctions Decl.)

Defendant's suspicions were aroused and it identified and deposed Jon Tamiyasu ("Tamiyasu"), the principal of ActSys Medical, Inc. ("ActSys").[4]  He testified that the invoice was not among those ActSys had records of issuing and that it differed from all of ActSys's invoices in several material respects, as discussed below. (Deposition of Jon Tamiyasu ("Tamiyasu Dep.") 48 at Corr. Samuel Sanctions Decl. Ex. 12.)

_____

[4]Plaintiffs' counsel knew of the deposition but was not present.  (Tamiyasu Dep. 7.)  Nevertheless, Plaintiffs do not oppose the use of Tamiyasu's testimony.

## II. LEGAL STANDARD

The Court has the inherent power, upon finding a party acted with wilfulness, fault, or bad faith, to impose sanctions.  See Chambers v. NASCO, Inc., 501 U.S. 32, 50-51 (1991); Anheuser-Busch v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995).  "Due process concerns further require that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression 'threaten[s] to interfere with the rightful decision of the case.'"  Anheuser-Busch, 69 F.3d at 348 (citing Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc., 682 F.2d 802, 806 (9th Cir. 1982).)

> Before imposing the harsh sanction of dismissal, the district court must weigh several factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

Anheuser-Busch, 69 F.3d at 348.

Where "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings," "[i]t is well settled that dismissal is warranted."  Anheuser-Busch, 69 F.3d at 348.

14

The evidence of wrongdoing must be clear and convincing.  <u>Shepherd v. American Broadcasting Cos., Inc.</u>, 62 F.3d 1469, 1477 (D.C. Cir. 1995); <u>Aoude v. Mobil Oil Corp</u>, 892 F.2d 1115, 1118 (1st Cir. 1989).

### III. DISCUSSION

**A.  Motion for Terminating Sanctions**

Defendant moves for terminating sanctions on the basis of the purported ActSys invoice, Vara's perjury about the invoice at his deposition and his alleged interference with the depositions of two of his former employees, Bedford and Pinkney.  Vara proffers evidence he did not interfere with the depositions of Bedford and Pinkney and so we turn to the undisputed evidence he falsified the purported ActSys invoice and provided perjured testimony at his deposition.  (<u>See</u> Vara Decl. ¶¶ 2-4.)

**1.  Defendant's evidence**

Defendant attached detailed evidence with the Motion for Sanctions that Vara falsified the purported ActSys invoice and gave perjured testimony at his deposition.

According to Defendant, Vara fabricated the purported ActSys invoice showing he bought Carimune, the medication Plaintiffs provided to Persinger, for $866,209.50.  At

the first session of Vara's deposition, on February 13, 2009, Vara testified Plaintiffs bought Carimune in 2004 and 2005 for about $700 a gram for Persinger's treatment; that Plaintiffs billed Defendant $230,000 for a single 40-gram transfusion; and that the price reflected the shortage of Carimune at that time.  (Vara Dep. 43, 45-46, 55-56 at Corr. Samuel Sanctions Decl. Ex. 1.)

During the first session of his deposition, defense counsel questioned Vara about how Plaintiffs determined the amount to charge Defendant.  (Vara Dep. 44-47, 52-60, 146-49 at Corr. Samuel Sanctions Decl.)  Vara did not recall from whom he bought Carimune, but testified usually he would have kept an invoice for the purchase, organized by year, in storage.  (Vara Dep. 43-45 at Corrected Samuel Sanctions Decl.)

At the second session of his deposition, on February 23, 2009, Vara testified he had found an invoice in storage, which is included as Exhibit 21 to the second volume of the transcript of Vara's deposition.  (Vara Dep. 250, Ex 21 at Corr. Samuel Sanctions Decl. Exs. 1, 11.)  Vara testified he made the telephone call to ActSys to place the order for the Carimune.  Vara could offer only vague information about where in the storage area he had found it less than a fortnight before.  (Vara Dep. 250 at Corr. Samuel Sanctions Decl.)

Defendant doubted the invoice was authentic and deposed Tamiyasu, the former president, CEO, and 90% owner of ActSys, the company Vara claimed sold him the Carimune for Persinger's treatment for over $800,000. (Tamiyasu Dep. 13-14 at Corr. Samuel Sanctions Decl. Ex. 12.)  By the time Defendant deposed Tamiyasu, Actsys was defunct.  (Tamiyasu 13-14.)  Nevertheless, Tamiyasu had access to records from Actsys and several persons went into those records and retrieved records of sales to Plaintiffs and records of Carimune sales to others. (Tamiyasu Dep. 20-21, 24, 29-32; Packlaian Decl. ¶¶ 2-7; Nosek Decl. ¶¶ 2-3.)

According to Tamiyasu, authentic ActSys invoices differ from the purported ActSys invoice in several material respects.  Authentic ActSys invoices: (1) were numbered sequentially and the purported ActSys invoice appears out of order; (2) ActSys invoices included the medicine's lot number and expiration date for ease of recall, while the purported ActSys invoice does not; (3) ActSys invoices were printed on pre-printed stationery with pre-printed terms on the back, which are lacking from the purported ActSys invoice.  (Tamiyasu Dep. 31, 37-41, 44-45.)  Tamiyasu testified that the purported ActSys invoice bore a logo which was not that of ActSys. (Tamiyasu Dep. 42.)  Together these differences support

17

Defendant's theory that the purported ActSys invoice was created by Vara rather than ActSys.

Tamiyasu also testified the purported ActSys invoice was not among the invoices that ActSys had records of issuing.  He produced a list of all the "active invoices and credit memos" issued to Plaintiffs; no listed invoice matches the date of the purported ActSys invoice and the last one predates the purported ActSys invoice. (Tamiyasu Dep. 47-48, Ex. 4; Sanctions Mot. 10.)  Second, Tamiyasu also produced a report of its sales of intravenous products  ("IGIV product or IVIG products") for the June 1, 2004 through June 30, 2006 period, on which the purported invoice could be expected to appear if it were authentic.  (Tamiyasu Dep. Ex. 5.)  This shows sale of Carimune to others but no sale of Carimune to Plaintiffs.  (Tamiyasu Dep. Ex. 5 at 1, 8.)

Defendant also investigated the amount charged for intravenous treatment for Persinger by other providers. It proffers admissible evidence that a hospital that administered the same dose of an intravenous drug to Persinger for $5,005 and that Coram, which provided in-home treatment to Persinger after Plaintiffs did, provided comparable intravenous treatment to her for $4,037.  (Corr. Shaffer Decl. ¶¶ 3-6, Exs. A-B.)  These

are significantly lower than the amounts billed by Plaintiffs.


     Plaintiffs do not dispute any of the evidence regarding the falsity of the purported ActSys invoice.

### 2.   Plaintiffs' evidence

     In response to the detailed and extensive evidence offered by Defendant in support of its properly-noticed Sanctions Motion asserting serious allegations of misconduct, Plaintiffs submitted only Vara's four-paragraph declaration.  In it, Vara identifies himself as the principal and owner of Plaintiffs.  He denies any contact with Pinkney, one of his former employees with whose deposition Defendant claims he interfered.  (Vara Decl. ¶ 2.)  He admits contact with Bedford, another former employee who did not appear for her deposition; Vara denies he instructed her not to appear.  (Vara Decl. ¶¶ 3-4.)  He makes absolutely no mention of the purported ActSys invoice.


     Vara's silence about the purported ActSys invoice speaks volumes, especially as he disputes his actions regarding Bedford and Pinkney's failures to appear.  (See Sanctions Opp'n 11-12.)  The Court construes Vara's silence as an admission he created the purported ActSys

invoice out of whole cloth and then offered false
testimony to support it.  The Court's interpretation
receives support from Plaintiffs' Opposition, which
announces "the 'false testimony' in this case was not
related to and did not involve any critical issues of
this case, was irrelevant or not material to the state
law claims . . . it also has absolutely no bearing
relationship or import for any of the ERISA claims which
will now completely comprise the case."  (Sanctions Opp'n
5:7-10.)


    In sum, Defendant has met its burden by offering
uncontradicted, clear, and convincing proof Vara
falsified evidence and committed perjury.  We now turn to
the five factors for determining whether termination is
the proper sanction, placing emphasis on the last three.


    **1.   The public's interest in expeditious resolution
          of litigation**

    This factor weighs in favor of granting the Motion,
as terminating sanctions would resolve the case
immediately.  More fundamentally, however, this factor
favors dismissal because a case founded on perjured
testimony and falsified evidence should be disposed of
with dispatch, in order that the Court can turn its
attention to other, meritorious, disputes.

**2.    The court's need to manage its docket**

Vara's introduction of perjured documents interferes with the Court's ability to manage its docket, as it delays the hearing of other matters.  Again, this factor favors granting the Motion for terminating sanctions.

**3.    The risk of prejudice to Defendant, the party seeking sanctions**

According to Defendant, it has already suffered the prejudice of bringing a Motion for Summary Judgment to defeat a claim premised in part on a falsified document. It will suffer further prejudice if forced to defend the ERISA claim.  Furthermore, it has been forced to defend this case from the outset – despite its basis in fraud.

Plaintiffs dispute the prejudice suffered by Defendant.  According to Plaintiffs, the purported ActSys invoice will not affect the remaining ERISA claim as that will be tried on the administrative record, of which the purported ActSys invoice is not a part.  (Sanctions Opp'n 6.)  On this basis, Plaintiffs claim "there is no possibility that the subject document will threaten the integrity of the court's determination or adjudication of the substantive issues of this case."  (Sanctions Opp'n 6.)

Plaintiffs' argument lacks merit.  At the very least, it fails to account for the presence of documents in the administrative record submitted by Vara or containing information originating from him.  (See Sanctions Opp'n 4.)  The basis for the ERISA claim is lack of payment for services rendered by Plaintiffs, the very same type of claim they attempted to support with a fraudulently fabricated invoice.  Moreover, any assertion by Plaintiffs of nonpayment, given their admitted wrongdoing as to the fraudulent invoice, would put Defendant to extraordinary effort and expense to verify independently every fact in the administrative record which could be traced to Vara.  Accordingly, prejudice to Defendant weighs heavily in favor of granting the Sanctions Motion. See Anheuser-Busch, 69 F.3d at 348.

**4.   The public policy favoring disposition of cases on their merits**

Due process requires the sanctions imposed be related to the sanctionable conduct.  See Anheuser-Busch, 69 F.3d at 348; Phoceene, 682 F.2d at 806.  Here, terminating sanctions are congruent with due process because Plaintiffs' past conduct obscures the merits of their claims.  Their prayer for relief on the remaining ERISA claim is premised on the value of the benefits Plaintiffs provided Persinger, whom they assert made a valid

assignment of her claim to them.[5]  Plaintiffs' unlawful

conduct likely will render it difficult or impossible to

determine the merits of this case.


     <u>Phoceene</u>, on which Plaintiffs rely, is easily

distinguishable.  There, plaintiff's dishonesty related

to whether he was sufficiently sick in France to merit

continuation of his trial; the case was unrelated to his

sickness.  682 F.2d at 804-05.  The Ninth Circuit found

plaintiff's dishonesty did not go to the merits of his

case.  <u>Id.</u>  Here, in contrast, Vara fabricated evidence

to support his claim to damages, a substantive matter.

The Court will not "appl[y] law to lies.  True facts must

be the foundation for any just result." <u>Valley</u>

<u>Engineers, Inc.</u>, 158 F.3d at 1058.  This factor weighs

heavily in favor of terminating sanctions.

---

[5]Plaintiffs' prayer for relief for the ERISA claim is
"[f]or benefits payable under the PLAN policy to
reimburse [Plaintiffs] for services rendered to
[Plaintiffs], a participant/ beneficiary of an employee
benefit plan insured and underwritten by the PLAN. . ."
(SAC at 29:22-25.)  Plaintiffs claim damages as the
assignee of Persinger.  Accordingly, the price paid by
Plaintiffs for the medicine Persinger received is
relevant to Plaintiffs' damages claim on their ERISA
claim.

**5.   The availability of less drastic sanctions**

Plaintiffs argue terminating sanctions are not appropriate because less drastic sanctions are available. Plaintiffs asserts terminating sanctions should not be imposed because they have not already been sanctioned in this case, their failure to oppose the Motion for Summary Judgment as to their state law claims is a sufficient "self-imposed sanction," and the ERISA claim is entirely insulated from Vara's untruthfulness.  (Sanctions Opp'n 4-5, 9-11.)

Every one of these propositions lacks merit. Terminating sanctions are appropriate for a single act of misconduct if it is sufficiently serious.  <u>Valley Engineers Inc.</u>, 158 F.3d at 1056 (reviewing precedent and discussing imposition of sanctions under Fed. R. Civ. P. 37(b)(2) which provides judge with "discretion to 'make such orders . . . as are just'").  It is difficult to conceive an act of misconduct graver than the outright fabrication of evidence that Plaintiffs here undertook, and the perjury committed to undergird it.

Second, as discussed above, the documents in the administrative record, including claim forms, are affected by Vara's venality.  (<u>See</u> Vara Dep. 78-79, 137-40 at Corr. Samuel Summ. J. Decl.)  Accordingly,

24

Plaintiffs' self-imposed sanction does not address the
full scope of the damage Vara has inflicted on the
judicial process.  <u>See Phoceene</u>, 682 F.2d at 804-07
(plaintiff's deception "related not to the merits of the
controversy but rather to a peripheral matter: whether
[he] was in fact too ill to attend trial on October
10.").


Moreover, several of the cases Plaintiffs seek to
distinguish are in fact analogous.  In <u>Combs v. Rockwell
Intern. Corp.</u>, 927 F.2d 486 (9th Cir. 1991), the Ninth
Circuit upheld the dismissal of a case where the
plaintiff knowingly acquiesced to his attorney's
unsupported and material changes to his deposition
testimony.  The <u>Combs</u> court found that "[d]ismissal is an
appropriate sanction for falsifying a deposition.  Fed.
R. Civ. P. 11, as well as the court's inherent powers,
can be called upon to redress such mendacity."  <u>Combs</u>,
927 F.2d 486, 488.


Plaintiffs argue <u>Combs</u> is distinguishable as the
purported ActSys invoice is not central to their case.
(Sanctions Opp'n 6.)  As discussed above, that evaluation
of the falsified invoice is, kindly put, incorrect.
Accordingly, <u>Combs</u> supports the imposition of terminating
sanctions.  Here, as in <u>Combs</u>, Vara submitted untrue
deposition testimony.  <u>Combs</u>, 972 F.2d at 488.

Phoceene, on which Plaintiffs also rely at pages 6
and 7 of their Opposition, supports the imposition of
terminating sanctions because here the link between the
conduct and the sanctions complies with the requirements
of due process, as discussed above.  See 682 F.2d at 804-
06 (dismissal incorrect where "deception related not to
the merits of the controversy but rather to a peripheral
matter").

In sum, the Court rejects Plaintiffs' contention the
purported ActSys invoice "is not crucial to the case, but
is rather peripheral, potentially irrelevant and
certainly not cogent or material to the case."
(Sanctions Opp'n 7-8.)  The Court GRANTS the Sanctions
Motion.

**B.   Motion for Summary Judgment**

The Court finds Defendant prevailed on the merits as
to Count 1, relief pursuant to ERISA.  The Court
sustained Defendant's objections to all of Plaintiffs'
substantive evidence offered in opposition to summary
judgment on this claim, as discussed above.

Defendant adduces admissible evidence Defendant's
Plan will not pay out-of-network providers without proper
authorization and beneficiaries cannot assign benefits

26

1  "[e]xcept as otherwise permitted (a) by the Committee as

2  Program Administrator or the Claims Administrator. . .".

3  (DSUF ¶ 1; LaPlaca Decl. Ex. A 28.)

4

5

6      Plaintiffs proffer no proof authorization was

7  permitted.  Accordingly, the Court GRANTS Defendant's

8  Motion for Summary Judgment on the merits.

9

10     In the alternative, "[i]t is firmly established that

11  the courts have inherent power to dismiss an action or

12  enter a default judgment to ensure the orderly

13  administration of justice and the integrity of their

14  orders." <u>Phoceene</u>, 682 F.2d at 806.  The Court GRANTS

15  the Motion for Summary Judgement as a sanction.

16

17                    **IV. CONCLUSION**

18

19     The Court GRANTS the Sanctions Motion and the Motion

20  for Summary Judgment.  Dismissal is an appropriate

21  sanction for falsifying deposition testimony and related

22  documents.  <u>Combs</u>, 927 F.2d at 488.

23

24

25  Dated: <u>May 13, 2009</u>          _____

26                        VIRGINIA A. PHILLIPS
                          United States District Judge
27

28

                          27